# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1474

_____

| | | |
|---|---|---|
| Terri Wallace, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| DTG Operations, Inc., a Foreign | * | |
| Corporation, also known as Dollar | * | |
| Rent-A-Car Systems, Inc., | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Dollar Rent-A-Car, Inc., a Foreign | * | |
| Corporation, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: October 15, 2008
Filed:  April 17, 2009

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant DTG Operations, Inc. (the "Company"), a rental car company, appeals an adverse jury verdict in favor of Plaintiff Terri Wallace, a former station manager for the Company, on her retaliation claim under the Missouri Human Rights Act (the "Act").  We affirm in all respects except as to the punitive damages award.

We reduce the punitive damages award to $120,000, which is four times the actual damages, and remand to the district court for entry of judgment consistent with this opinion.

I.     Background

Taken in a light most favorable to the prevailing party, the evidence at trial established facts substantially as set forth in our prior opinion, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1113–17 (8th Cir. 2006).  Briefly, the evidence showed that Wallace complained about a supervisor's behavior that she deemed to be offensive and characterized as sexually harassing.  Shortly after her complaint, the Company terminated her employment.

The Company provided shifting explanations as to the reason for her termination.  For example, the Company stated that poor performance was an issue.  Initially, however, the Company had stated that the location where Wallace worked was overstaffed and that her termination was a consequence of a downturn in business coupled with a policy requiring layoffs to be based strictly on seniority.

In addition, at least one decisionmaker expressed anger based on Wallace's mode of reporting the alleged sexual harassment, even though she followed a recommended reporting method. Further, Wallace's termination was isolated among comparable employees, notwithstanding the Company's claims that company-wide layoffs were required at the time.

The Company also claimed to have a policy precluding reassignments of persons with certain disciplinary reports in their personnel files, but the Company did not apply the policy uniformly.  For example, an employee at Wallace's location had received a transfer despite the presence of a purportedly disqualifying disciplinary report in his file.  Wallace, whose personnel file did not include a disciplinary report

of the same severity, did not receive a transfer although she asked for one and although there were open positions at the time of her termination.

Finally, the timing of Wallace's termination served as evidence of retaliation when viewed in light of these several other factors that supported an inference of retaliatory intent. Two decisionmakers involved with Wallace's termination made the decision to terminate Wallace fifteen days after her complaint. Also, on the day they claim to have decided to terminate Wallace, one of them consulted with the supervisor whom Wallace had accused of sexual harassment.

Wallace initially pleaded federal and state claims, but she dropped her federal claims before the district court submitted the case to the jury. As such, the jury only considered Wallace's state-law claim that the Company retaliated against her in violation of the Act. The parties hotly contested the jury instruction regarding causation. The Company argued that the federal "determinative factor" standard should apply to Wallace's state-law retaliation claim. See, e.g., Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1148 (8th Cir. 2008) ("To make out a retaliation claim, the plaintiff must show that the protected conduct was a determinative—not merely motivating—factor in the employer's adverse employment decision." (internal quotation omitted)). Wallace argued correctly that, in Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 820 (Mo. 2007) (en banc), the Missouri Supreme Court had applied a "contributing factor" standard to define the causation element of a discrimination claim under the Act. Wallace argued that this same contributing factor standard should apply to her retaliation claim. The Company countered that the holding of Daugherty was limited to discrimination claims because minor differences in statutory language in the sections of the Act addressing discrimination and retaliation justified different causation standards. The district court determined that the contributing-factor standard applied, and the court instructed the jury accordingly.

Based on this causation instruction, the jury found in favor of Wallace and awarded her $10,000 in lost wages and benefits. The jury also awarded her $20,000 in additional compensatory damages and $500,000 in punitive damages. Finally, the district court ordered the Company to pay approximately $220,000 in attorneys' fees and expenses.

The Company moved for judgment notwithstanding the verdict or, in the alternative, a new trial or an altered or amended judgment. The district court denied the motions. In the present appeal, the Company renews its challenge to the causation instruction and argues that, regardless of the instruction, the evidence was insufficient to support the verdict or the awards of actual and punitive damages. Finally, the Company argues that the punitive damages were constitutionally excessive and that the award of attorneys' fees and expenses was excessive. We provide additional discussion below regarding the evidence of damages and fees.

II.    Discussion

At the time of trial and at the time of oral arguments, there was no Missouri authority conclusively answering the question of whether the "determinative factor" or the "contributing factor" standard should govern a Missouri Human Rights Act retaliation claim.[1] Subsequently, however, the Missouri Supreme Court issued its

---

[1]There was authority suggesting the "contributing factor" standard should apply, but these cases were not so clear as to eliminate uncertainty regarding this issue. See Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 649–50 (Mo. Ct. App. 2007) (blending a discussion of retaliation and sex discrimination and stating, "By applying the 'contributing factor' analysis to Korando's retaliatory discharge claim, the claim will survive a motion for summary judgment if there is a genuine issue of material fact as to whether her sex was a 'contributing factor' in Employer's termination decision."); Graf v. Wire Rope Corp. of Am., 861 S.W.2d 588, 591 (Mo. Ct. App. 1993) (approving an instruction, challenged on other grounds, that applied a "caused or contributed to cause" standard to a pre-Daugherty retaliation claim).

-4-

opinion in <u>Hill v. Ford Motor Co.</u>, No. SC 88981, ___ S.W.3d ___, 2009 WL 454281 (Mo. Feb. 24, 2009) (en banc). In that case, the Missouri Supreme Court held that the "contributing factor" standard of <u>Daugherty</u> applies to retaliation claims as well as discrimination claims. <u>Id.</u> at *4–5, 7. In light of <u>Hill</u>, we reject the Company's arguments regarding the instruction and affirm the district court in its prescient application of the appropriate standard.

Regarding the sufficiency of the evidence to support the finding of liability, we again reject the Company's arguments. The Company presented testimony and non-frivolous arguments regarding at least two legitimate explanations for its actions: overstaffing at Wallace's location relative to business needs and poor performance by Wallace. The Company strongly contested the allegation that retaliatory intent was a contributing factor in Wallace's termination. Based on the trial record, it would have been reasonable for a jury to have accepted either of these explanations and to have found that retaliation was not a contributing factor in Wallace's termination. The jury, however, did not accept this testimony, and we cannot now adopt the Company's arguments without viewing the record in a light unfavorable to the verdict. <u>Dominic v. DeVilbiss Air Power Co.</u>, 493 F.3d 968, 974 (8th Cir. 2007) ("The evidence is viewed in the light most favorable to the jury verdict which should not lightly be set aside."); <u>Spencer v. Stuart Hall Co.</u>, 173 F.3d 1124, 1128 (8th Cir. 1999) ("Where conflicting evidence is presented at trial, it is the jury rather than this court which assesses the credibility of the witnesses and decides which version to believe.").

Regarding lost wages and benefits, the parties agreed that such damages were to be limited to a twelve-week period of time. The Company argues that, based on Wallace's base salary at the time of her termination, her lost wages were, at most, approximately $5000. The Company argues further that any additional award of wages and benefits damages is unsupportable and speculative. Although there was testimony regarding potential monthly bonuses of $200 to $300, the trial testimony provided only a qualitative discussion of Wallace's other benefits, including things

such as full health benefits and the free use of a company car. The testimony also showed that Wallace would have been eligible to participate in the Company's retirement plan if she had been employed for a few more days.

Contrary to the Company's arguments, we do not believe that the quantitative testimony regarding salary and bonuses, coupled with the qualitative testimony regarding benefits, was insufficient to support the finding of $10,000 in lost wages and benefits. In this case, the jury was entitled to place a value on those elements of actual damages that the testimony identified in qualitative terms without precise testimony as to dollar amounts. The benefits at issue—free use of the Company's cars, including gas and insurance, and health benefits—were, by their nature, easily understandable and quantifiable by lay persons. The jury was not required to check common sense at the door, and the amount the jury found is not such that we may conclude it was the result of unguided speculation. See Comcast of Illinois X v. Multi-Vision Electronics, Inc., 491 F.3d 938, 947 (8th Cir. 2007) ("Damages may not be determined by mere speculation or guess, but they may be subject to just and reasonable inference, although the result be only approximate." (internal quotations omitted)); United States v. 158.24 Acres, 696 F.2d 559, 565 (8th Cir. 1982) ("[W]ithin limits the jury may weigh the evidence and draw from the facts reasonable inferences and conclusions, using in this connection the jurors' own reason, common sense and experience in life.").

Similarly, the evidence supports the jury's award of $20,000 for "other damages sustained by the plaintiff, such as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," as set forth in the relevant jury instruction. We note first that the Company attempts to characterize these damages as relating only to emotional distress. This category of damages, however, was broader in scope than emotional distress and included damages of the types listed in the relevant jury instruction.

Second, the evidence included testimony from Wallace regarding her reaction to losing her job, the value she placed on the job, and her actions and opportunities following her termination. In addition, Wallace's aunt testified regarding Wallace's emotional state after her termination and what the job had meant to Wallace. In light of this evidence, the jury's award of other compensatory damages was not so great a figure as to fall outside the range of permissible awards. See Mathieu v. Gopher News Co., 273 F.3d 769, 783 (8th Cir. 2001) ("Certainly, another jury may have come out with a lower figure, but yet another may have awarded a higher amount. We cannot say that the magistrate judge committed a manifest abuse of discretion by enforcing the damages this jury awarded."); see also Butler, 979 F.2d 661, 684–85 (8th Cir. 1992) (Arnold, J., dissenting) ("Presumably, [jurors] are expected to arrive at an appropriate figure for compensating pain and suffering based on their experience with the general run of humanity. . . . Because a number fixed on in this fashion is likely to be reasonable if it falls within rather broad and elastic limits, an award for pain and suffering will only rarely be disturbed on appeal, especially since we review the award by asking whether it is 'shocking' or 'monstrous,' itself at least a partly subjective inquiry with each judge. ").

Regarding punitive damages, the evidence, taken in a light most favorable to Wallace, was sufficient under Missouri law to justify submitting this issue to the jury. The award, however, was excessive when viewed in light of prevailing due process limitations. The punitive damages in this case were fifty times greater than Wallace's lost wages and benefits, twenty-five times greater than her other compensatory damages, and approximately sixteen times greater than all of the actual damages combined.

Given the nature of Wallace's claims and the evidence at trial, the most important factors to consider in a due process analysis include "the degree of reprehensibility of the defendant's conduct" and the "ratio [of punitive damages] to the actual harm inflicted on the plaintiff." BMW of N. Am., Inc. v. Gore, 517 U.S.

559, 575, 580 (1996). Applying the first of these factors, the present defendant's actions were not so egregious as to set this case apart from other retaliation cases involving punitive damage awards. With no such outstanding circumstances, the extraordinary, sixteen-to-one ratio appears excessive.

A high ratio may be appropriate based on particularly reprehensible conduct or where actual damages are nominal. See JCB, Inc. v. Union Planters Bank, NA, 539 F.3d 862, 876 (8th Cir. 2008) ("Punitive damages may withstand constitutional scrutiny when only nominal or a small amount of compensatory damages have been assigned, even though the ratio between the two will necessarily be large."). Clearly, however, the jury's award of $30,000 actual damages in this case is not a nominal amount that might excuse a higher ratio. As such, a single-digit multiple should be an outer limit on Wallace's award. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); Williams v. ConAgra Poultry Co., 378 F.3d 790, 799 (8th Cir. 2004) ("In the absence of extremely reprehensible conduct against the plaintiff or some special circumstance such an extraordinarily small compensatory award, awards in excess of ten-to-one cannot stand.").

In State Farm, the Court pointed to traditional remedies of "double, treble, or quadruple damages" and stated that "they demonstrate what should be obvious: [s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 or . . . 145 to 1." Id. (internal citation omitted). While suggesting that ratios alone cannot control the analysis, the Supreme Court has repeatedly intimated that a four-to-one ratio is likely to survive any due process challenges given the historic use of double, treble, and quadruple damages as a punitive remedy. See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23–24 (1991) (calling a punitive damages award that was "more than 4 times the amount of compensatory damages .

-8-

. . close to the line"); Gore, 517 U.S. at 581 & n.33 (citing ratios from the remedy provisions of historical statutes that awarded double, treble or quadruple damages). Thus, in accordance with this guidance from the Court, we believe a four-to-one ratio is appropriate. Applying a multiple of four, we reduce the present punitive damages award from $500,000 to $120,000.

Regarding attorneys' fees, expenses, and costs, the Company argues the total award of approximately $220,000 was excessive. The Company characterizes Wallace's success as limited and points to actions by Wallace that led to an initial mistrial and increased attorney hours. See Hensley v. Eckerhart, 461 U.S. 424, 435–36 (1983) (discussing factors to consider when assessing attorneys' fees, including degree of success). "[W]e review district courts' fee awards under the abuse of discretion standard." Spirtas Co. v. Ins. Co. of State of Pa., 555 F.3d 647, 654 (8th Cir. 2009).

To the extent the Company's arguments regarding limited success are premised on Wallace's voluntary dismissal of her federal retaliation claim, we find the argument to be without merit. The parties continued to dispute the applicable standard for causation until the district court established the jury instructions, and success on the jury instruction issue appears to have driven Wallace's decision to drop her federal claims. The Company does not suggest how preparation or trial of the case would have differed had the federal claim been submitted to the jury, and, apart from the causation standard, the state and federal claims involved the same issues.

We also reject the argument that we should reduce the fee award based on a lack of success regarding an initially pleaded sex discrimination claim. Most of the expense in this case was incurred after termination of the discrimination claim, and facts surrounding the alleged discrimination were relevant to the retaliation claim because the act that induced the retaliation was Wallace's report of harassment. We find no abuse of discretion in the district court's award. See Fish v. St. Cloud State

Univ., 295 F.3d 849, 852 (8th Cir. 2002) ("The district court was in the best position to assess the work done by counsel . . . .").

Finally, we have considered the Company's several arguments regarding the district court's evidentiary rulings and find no abuse of discretion. See United States v. Raplinger, 555 F.3d 687, 691 (8th Cir. 2009) (standard of review).

The judgment of the district court is affirmed in part, and we remand for entry of an amended judgment reflecting a remittitur of punitive damages to $120,000.

_____