# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1593

_____

| | | |
|---|---|---|
| Robin Bair; Francis Zephier, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for the |
| | * | District of South Dakota. |
| Robert A. Callahan, M.D., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 19, 2011
Filed: January 6, 2012

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and MAGNUSON,[1] District Judge.

_____

RILEY, Chief Judge.

Robert A. Callahan, M.D., performed an unsuccessful spinal fusion surgery on Robin Bair. Bair and Francis Zephier, Bair's wife, (collectively, appellants) sued Callahan for negligence and loss of consortium. After the jury found in favor of

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

Callahan, the appellants moved for a new trial, arguing (1) the district court[2] abused its discretion by excluding evidence concerning Callahan's treatment of other patients; and (2) the verdict was "contrary to the clear weight of the evidence and would result in a miscarriage of justice." The appellants appeal from the district court's denial of their motion. Because the district court acted well within its discretion in both respects, we affirm.

## I.    BACKGROUND
### A.    Facts

On September 26, 2007, Callahan performed a spinal fusion surgery to repair Bair's L5[3] spondylolysis, a vertebral crack in the arch usually caused by trauma. At that time, Callahan practiced orthopedics in Yankton, South Dakota, and he conducted Bair's surgery at the Lewis and Clark Specialty Hospital in Yankton. A surgeon performing a spinal fusion places a bone graft on and between the affected vertebrae. The surgeon inserts screws through the graft and into a part of a vertebra called the pedicle, securing the graft with rods. This helps the graft fuse to the vertebrae. The vertebrae may fail to fuse even when the surgeon exercises proper care. Misplaced pedicle screws make fusion less likely. A misplaced screw may cause nerve damage and pain by impinging on either a nerve root or the spinal cord.

Callahan originally planned to insert four screws during Bair's surgery—one on each side of the L5 and S1 vertebrae—though he anticipated he might need to insert a screw at L4 because of Bair's size. Callahan placed a screw on the right side of the L5 vertebra, but removed it because he did not believe "it had good purchase of bone." He then placed a screw on the right side of L4 instead. Apart from the

---

[2]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

[3]The vertebrae in the lumbar spine, starting from the top, are designated as L1 to L5. The lumbar spine connects to the upper part of the sacrum at S1. Bair signed a consent form indicating Callahan would fuse L4 to S1.

screw Callahan removed, Callahan ultimately inserted four screws: one each on the right side of L4, the left side of L5, the right side of S1, and the left side of S1.

After the surgery, Bair complained of continued back pain and leg pain. Bair eventually underwent a second surgery, during which Quentin Durward, M.D., removed and replaced all of the screws and hardware Callahan inserted. Bair's back did not fuse after either surgery.

## B.    Procedural History
### 1.    Appellants' Complaint
On February 2, 2009, the appellants sued Callahan in the district court, invoking its diversity jurisdiction under 28 U.S.C. § 1332.[4] The appellants alleged that during Bair's surgery Callahan negligently placed the screws "in an abnormal position," requiring later removal of the misplaced screws, damaging a nerve and causing Bair pain.

### 2.    Callahan's Treatment of Other Patients
On August 17, 2010, Callahan filed a motion in limine to exclude any evidence of Callahan's treatment of other patients, particularly patients with misplaced pedicle screws, during the approximately eighteen months Callahan worked in Yankton. The district court deferred ruling on the motion.

On the first day of trial, the district court announced it would not allow the appellants to introduce the evidence of other patients' surgeries at that time, but noted "it's possible the evidence could come in depending on what Dr. Callahan's testimony is and what the expert for Dr. Callahan may have to say. . . . [that is] for some purpose other than propensity."

---

[4]Appellants are citizens of South Dakota, Callahan is a citizen of Oregon, and the amount in controversy exceeds $75,000.

The district court addressed this issue again during Callahan's testimony. The court mentioned Federal Rules of Evidence 404 and 608 and expressed concern with "having mini trials. You are having the doctor testifying to multiple occasions where he's had good results. You wind up getting way off track in what the issue is for trial." The district court acknowledged the evidence might be used to impeach Callahan's credibility, stating it would

> allow [the appellants] to ask the question, the one question, "Did you misplace pedicle screws on other patients while doing surgery at Yankton Medical Clinic?" If he answers that question yes, that's the end of the testimony on that subject. If he answers the question no, there's a question about credibility or truthfulness that comes up. So that is the one and only question the Court is going to allow on cross-examination.

The appellants' attorney asked this question, to which Callahan answered, "Yes."

### 3. Conflicting Expert Testimony

At trial, witnesses gave conflicting testimony about whether Callahan misplaced the pedicle screws at L5 and S1 and failed to discover and remove any misplaced screws.[5] The expert witnesses disputed whether Callahan misplaced the screw at L5, drawing opposite conclusions from the CT myelogram images. The appellants' witnesses opined that both of the screws at S1 were misplaced, irritating Bair's S1 and S2 nerve roots. Callahan's expert witness disagreed, stating that neither screw damaged Bair's S1 root and Bair did not show symptoms of S2 nerve root damage.

Callahan testified x-rays taken after the surgery showed "good position of [Bair's] internal fixation and bone graft." Callahan also testified Bair did not show

---

[5]The appellants' expert acknowledged that Callahan properly placed the screw at L4.

the extreme pain associated with pedicle screws touching a nerve root, instead attributing Bair's pain to persistent instability and post-operative scar tissue. Callahan presented evidence that Bair's symptoms began approximately nine years before the surgery and Bair's weight and diabetes might have contributed to his pain.

### 4. Motion for a New Trial

On September 3, 2010, the jury found Callahan was not negligent in treating Bair. On October 5, 2010, the appellants moved for a new trial, arguing (1) the district court abused its discretion by excluding evidence concerning Callahan's treatment of other patients; and (2) the verdict was "contrary to the clear weight of the evidence and would result in a miscarriage of justice."

The district court held a hearing on the motion, at which the district court discussed the other patients' surgeries and how the court had "ultimately employed Rule 404(b) and Rule 403 and some other rules to exclude the evidence." The district court also reiterated its concern about "mini trials." The appellants appeal the district court's denial of their motion for a new trial.

## II. DISCUSSION
### A. District Court's Evidentiary Ruling

"The district court has broad discretion in deciding whether to admit evidence at trial." Cummings v. Malone, 995 F.2d 817, 823 (8th Cir. 1993). We review the district court's decision to exclude the evidence concerning Callahan's other patients for "'clear and prejudicial' abuse of that discretion." Id. If the district court acted within its discretion in excluding the evidence under either Rule 403 or Rule 404, we will affirm. Cf. Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 895 (8th Cir. 2010) ("[W]e may affirm on any ground supported by the record.").

### 1. Rule 404(b)

Rule 404(b) provides,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have interpreted Rule 404(b) as permitting evidence of prior acts if it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to [the event at issue]." Batiste-Davis v. Lincare, Inc., 526 F.3d 377, 380 (8th Cir. 2008) (alteration in original) (quoting Berry v. Oswalt, 143 F.3d 1127, 1132 (8th Cir. 1998) (internal quotation marks omitted)).

Evidence concerning Callahan's past treatment of other patients is not admissible under Rule 404(b). We reject appellants' contention the evidence proves Callahan did not know how to place the screws properly because this is not the kind of "knowledge" Rule 404(b) contemplates. The district court correctly reasoned,

> In reality, Dr. Callahan had the knowledge to perform the surgery [because Dr. Callahan had the requisite training, experience, and board certification as an orthopedic surgeon]; the real question was whether Dr. Callahan applied his knowledge competently [in Bair's surgery] .... [The appellants'] evidence ran more to showing lack of competence or care—that is, malpractice—with respect to other patients. From such evidence, the jury could infer that Dr. Callahan had a propensity to commit malpractice by misplacing pedicle screws and thus may or perhaps must have committed similar malpractice in the surgery to Mr. Bair.

We agree.

The appellants rely on the South Dakota Supreme Court's decision reaching a contrary conclusion in Kostel v. Schwartz, 756 N.W.2d 363, 376 (S.D. 2008). The defendant doctor in Kostel was accused of misreading x-rays and conducting surgery beyond the patient's consent. Id. at 368. The South Dakota Supreme Court held it was not an abuse of discretion for the district court to admit evidence of prior instances of the defendant misreading x-rays and "conducting surgery at unconsented-to levels" under South Dakota's version of Rule 404(b) to show the defendant lacked the knowledge to perform the procedure. Id. at 368, 376. Kostel is not binding on this court, and we find it unpersuasive. We believe the South Dakota Supreme Court's decision in Kostel misinterprets Rule 404(b)'s reference to "knowledge" by allowing parties to introduce evidence showing only propensity to commit malpractice.

Also, we note the South Dakota Supreme Court in Kostel was affirming a trial court's exercise of its discretion in admitting evidence. We are affirming the district court's exercise of discretion in excluding evidence. The district court did not clearly and prejudicially abuse its considerable discretion in prohibiting the admission of the evidence concerning Callahan's other patients.

### 2.    Rule 403

The district court's exclusion of the evidence was also proper under Rule 403.[6] Rule 403 allows a district court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

---

[6]Callahan contends the appellants waived the right to contest this issue on appeal. The district court's decision relied on Rule 403, and we choose not to ignore that reasoning.

The district court, in its order denying the appellants' motion for a new trial, said it considered Rule 403 at trial. Though the district court did not specifically mention Rule 403 until the hearing on the motion for a new trial, the record reflects the district court conducted a Rule 403 balancing test at trial. See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 716 & n.1 (8th Cir. 2001) (concluding the district court considered Rule 403, even though the district court did not explicitly mention the rule). After finding the evidence did not tend to prove anything other than propensity to commit malpractice, the district court expressed its concern with "mini trials," which would distract the jury from the real issue in the trial—whether Callahan negligently misplaced screws during Bair's surgery.

The district court did allow appellants to ask Callahan if he had misplaced pedicle screws in other patients at the Yankton Medical Clinic. Callahan answered, "Yes." This evidence gave appellants an argument to present to the jury without the necessity of litigating each instance of misplaced pedicle screws. The district court's balancing of the evidence under Rule 403 was fair and reasonable. The district court's handling of this evidence quite simply did not affect appellants' substantial rights. See Fed. R. Evid. 103.

The district court did not abuse its discretion by excluding further evidence under Rule 403 because any relevance was substantially outweighed by the evidence's greater potential to prejudice Callahan unfairly, confuse the jury, and cause undue delay.

**B.    Motion for a New Trial**

The appellants appeal the district court's refusal to grant a new trial based on the appellants' assertion the verdict was against the weight of the evidence. We review this decision for abuse of discretion. See Weitz Co. v. MH Washington, 631 F.3d 510, 520 (8th Cir. 2011). We will not reverse the district court's decision

"unless there is a clear showing that the outcome is 'against the great weight of the evidence so as to constitute a miscarriage of justice.'" Id. (quoting Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1197 (8th Cir. 2001)).

The district court did not abuse its discretion because the district court appropriately deferred to the jury's weighing of conflicting expert testimony about whether Callahan properly placed the pedicle screws. See Wallace v. DTG Operations, Inc., 563 F.3d 357, 361 (8th Cir. 2009). Callahan's medical opinion evidence supported the jury's verdict. No miscarriage of justice occurred.

## III. CONCLUSION

We affirm the district court's judgment.

_____