# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1285
_____

Jeannie K. May

*Plaintiff - Appellee*

v.

Nationstar Mortgage, LLC

*Defendant - Appellant*

_____

No. 16-1307
_____

Jeannie K. May

*Plaintiff - Appellant*

v.

Nationstar Mortgage, LLC

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2016
Filed: March 29, 2017

_____

Before WOLLMAN and SMITH,[1] Circuit Judges, and WRIGHT,[2] District Judge.
_____

WRIGHT, District Judge.

Appellee/Cross-Appellant Jeannie K. May commenced this action to recover damages under state and federal law arising from the debt-collection practices of Appellant/Cross-Appellee Nationstar Mortgage, Inc. A jury found in favor of May on her invasion-of-privacy claim and her claim that Nationstar negligently violated the Fair Credit Reporting Act. The jury awarded May compensatory damages on both claims and punitive damages on her invasion-of-privacy claim.

On appeal, Nationstar argues that insufficient evidence supports the jury's award of punitive damages because May failed to present clear and convincing evidence that Nationstar acted with an evil motive or with a reckless indifference to May's rights. In the alternative, Nationstar contends that the punitive damages award is unconstitutionally excessive in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. May cross-appeals, challenging the district court's[3] exclusion of testimony at trial and its jury instruction addressing the Real Estate Settlement Practices Act. We affirm.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

[2]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

[3]The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

May purchased a home in Overland, Missouri, secured by a $100,000 mortgage in 2007. Shortly thereafter, she stopped making mortgage payments and filed for Chapter 13 bankruptcy. Through the bankruptcy process, May entered a five-year payment plan to pay down her mortgage and arrears. Although Nationstar acquired the servicing rights to May's mortgage in 2010, Nationstar did not communicate directly with May because of the pending bankruptcy. When May's debt was discharged from bankruptcy in January 2013, she requested monthly mortgage statements from Nationstar.

May received her first mortgage statement in March 2013. The statement erroneously included thousands of dollars in "lender-paid" expenses. Also, rather than applying a $51 credit to May's account, Nationstar improperly debited $5,162 from the account. Nationstar's errors caused its records to incorrectly reflect a delinquency of $8,534.94 on May's mortgage. Nationstar initiated collection efforts.

May received her first collection call from Nationstar in March 2013, the same month that she began receiving mortgage statements. May immediately contacted Nationstar, but Nationstar's employees—acting on erroneous records—informed May that she was delinquent on her mortgage. During the next several months, May regularly received calls from Nationstar at her home, in public and, most often, at work.

In April 2013, prompted by a call from May, Nationstar submitted May's file to its research department. Nationstar determined on May 15, 2013, that it had made an accounting error in May's account and directed its cash department to credit the account from Nationstar's internal bankruptcy fund. Nationstar's cash department rejected the requested credit, however, because May had been discharged from bankruptcy and her account no longer reflected a bankruptcy code. Nationstar's

research department never followed up on this discrepancy, and Nationstar never credited May's account.

Instead, Nationstar resumed its collection efforts and presented May with two options—vacate her home or accept a loan modification. The proposed loan modification would have added the erroneously calculated arrears to May's principal balance. May refused, and Nationstar initiated the loan modification anyway. May repeatedly attempted to correct the accounting errors by calling and sending written complaints to Nationstar. Although May continued tendering monthly mortgage payments, Nationstar began rejecting the payments in September 2013 because its internal policy required it to accept only full payments. Nationstar deemed May's payments insufficient because of its erroneous determination that her account was in arrears. Nationstar initiated its foreclosure process. May retained counsel.

In his December 19, 2013 letter, May's attorney attempted to explain May's circumstances to Nationstar. In response, Nationstar's correspondence verified the debt and enclosed the note, deed of trust and a payment history. May's attorney requested a substantive response. Nationstar in turn notified May of the February 24, 2014 foreclosure sale. Thereafter, Nationstar conducted frequent inspections of May's residence, allegedly in preparation for the foreclosure sale.

May filed this lawsuit together with a motion for a temporary restraining order to stop the foreclosure sale. As relevant here, May alleged that Nationstar's conduct (1) violated her right to privacy under Missouri law, (2) constituted negligent reporting under the Fair Credit Reporting Act, (3) willfully violated the Fair Credit Reporting Act, (4) violated the Fair Debt Collection Practices Act, and (5) violated the Real Estate Settlement Practices Act. Nationstar removed the action to the Eastern District of Missouri and cancelled the foreclosure sale. Nationstar's

subsequent investigative and remedial process took several months. On April 28, 2014, Nationstar credited the erroneously deducted $5,162 to May's account, but Nationstar did not remove the improper "lender-paid" expenses or correct the rejection of May's monthly payments. Nationstar's revised records continued to erroneously indicate that May's account was delinquent. The account balance on May's mortgage was not corrected until October 2014.

At trial, May recounted her experience with Nationstar. This included May's repeated efforts to remedy her account with Nationstar and stop Nationstar's collection practices. May's credit score was also adversely affected because Nationstar reported a delinquent debt that she did not owe. May and her physician testified that May experienced symptoms of severe stress attributable to Nationstar's conduct, including abdominal pain, vomiting, depression and anxiety. May testified that Nationstar ignored her repeated requests to stop calling her, particularly at work, and that Nationstar's employees spoke to her in a mocking and sarcastic manner on several occasions. May argued that Nationstar's corporate culture unduly focused on collection efforts, which prevented Nationstar from correcting her account sooner.

Nationstar admitted that it made many mistakes when servicing May's account, but disputed May's allegations that these mistakes were intentional or the product of an institutionalized corporate practice. To counter May's suggestion that Nationstar was motivated by profit when it sought to foreclose on May's home, Nationstar presented evidence that it loses money when it forecloses on a property.

The jury awarded May $50,000 in compensatory damages and $400,000 in punitive damages for Nationstar's invasion of her privacy, in violation of Missouri law, and $50,000 in compensatory damages for Nationstar's negligent reporting, in violation of the Fair Credit Reporting Act. The district court subsequently denied

-5-

Nationstar's motion to alter or amend the judgment. Nationstar's appeal and May's cross-appeal follow.

I.

Nationstar advances two arguments, in the alternative, that challenge the award of punitive damages. First, Nationstar argues that insufficient evidence supports the jury's award of punitive damages because May failed to present clear and convincing evidence that Nationstar acted with an evil motive or a reckless indifference to May's rights. Alternatively, Nationstar challenges the constitutionality of the punitive damages award, arguing that because it is excessive, the award violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We address each argument in turn.

A.

Nationstar asserts that insufficient evidence supports the jury's award of $400,000 in punitive damages because the evidence fails to establish that Nationstar acted with ill-will or malice. Rather, according to Nationstar, the evidence supports the conclusion that Nationstar's errors were made in good faith. May counters that Nationstar was notified of its mistakes and its conduct thereafter demonstrated a "reckless disregard" to May's rights. By concluding that Nationstar acted with a reckless indifference to her rights, May contends, the jury found Nationstar's persistent collection efforts—despite May's payment history and debt protests—were inconsistent with Nationstar's claimed good faith.

When exercising diversity jurisdiction, as we do here, we apply the forum state's substantive law to any state-law claims. *See Bazzi v. Tyco Healthcare Grp., LP*, 652 F.3d 943, 946 (8th Cir. 2011). Under Missouri law, punitive damages may be awarded for invasion of privacy. *Engman v. Sw. Bell Tel. Co.*, 591 S.W.2d 78, 81-82 (Mo. Ct. App. 1979). The purpose of punitive damages is not to compensate the plaintiff, but rather to punish and deter the defendant. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. 1996). As such, punitive damages are an extraordinary and harsh remedy that should be awarded sparingly. *Id.* Whether the evidence is sufficient to support an award of punitive damages is a question of law, which we review de novo. *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 799 (8th Cir. 2013) (citing *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 869 (Mo. Ct. App. 2009)).

Before punitive damages can be awarded, a plaintiff must present clear and convincing evidence of a defendant's culpable mental state. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. 1989). This standard requires proof that the defendant acted with either an evil motive *or* a reckless indifference to the plaintiff's rights. *Id.* Such proof can be established by direct or circumstantial evidence. *Trickey*, 705 F.3d at 800; *Drury v. Mo. Youth Soccer Ass'n*, 259 S.W.3d 558, 573 (Mo. Ct. App. 2008). A jury may infer that a defendant has the requisite culpable motive when evidence of the defendant's reckless indifference to the interests and rights of the plaintiff is presented. *Drury*, 259 S.W.3d at 573. Such evidence supporting punitive damages need not be—and often is not—separate from the evidence supporting a substantive claim. *Trickey*, 705 F.3d at 800. It is the jury's role "to evaluate [the] evidence and decide what inferences should be drawn from it." *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 873 (8th Cir. 2008). We will overturn the jury's verdict only when "there is a complete absence of probative facts" such that "no proof beyond speculation [supports] the verdict." *Wedow v. City of Kansas City*, 442 F.3d 661, 669 (8th Cir. 2006).

-7-

In *JCB, Inc.*, we rejected an argument very similar to the one Nationstar advances here. When a bank and a private creditor disputed which party had a superior interest in a debtor's property, the bank eventually provided notice of its intent to sell the property despite multiple objections from the creditor. *JCB, Inc.*, 539 F.3d at 867-68. After the bank seized and sold the property, the creditor successfully sued for trespass and conversion and was awarded punitive damages. *Id.* at 869. The bank challenged the punitive damages award claiming, as Nationstar does here, that insufficient evidence supported the award because the bank believed in good faith that its actions complied with the law. *Id.* at 872-73. Such an argument did not prevail in *JCB, Inc.*, nor does it here. "Simply presenting . . . evidence of good faith to the jury does not immunize a defendant from punitive damages." *Id.* at 873. Determining the weight and credibility of the evidence, and any inference to be drawn from it, is the province of the jury. *Id.* This record presents no basis to reject the jury's determination.

Nationstar argues that the evidence demonstrates that its actions were nothing more than a series of unintentional errors. In doing so, Nationstar attempts to distinguish *JCB, Inc.*, based on its responsiveness to May. Nationstar maintains that "the defendant in *JCB* defiantly ignored the plaintiff's complaint and actually went through with a full foreclosure and sale," whereas here "Nationstar listened to May, tried to fix the problem with her account at multiple junctures, and never actually foreclosed on her home."[4] Evidence that Nationstar acted with a reckless indifference

---

[4]Nationstar also relies on decisions from other jurisdictions that address the award of punitive damages. These cases are inapposite. For example, Nationstar cites inapplicable Minnesota law and circumstances when punitive damages were awarded on a negligence claim, which requires a different standard of proof from the reckless-indifference standard employed here. *See, e.g.*, *Litchfield v. May Dep't Stores Co.*, 845 S.W.2d 596, 600 (Mo. Ct. App. 1992) (articulating standard in negligence cases involving punitive damages in which mere error is distinguished

to her rights is legally sufficient to establish the requisite mental state to support the punitive damages awarded by the jury, May counters. We agree.

The record reflects that May contacted Nationstar repeatedly to demand that it resolve the issues with her account. But rather than suspending its efforts, Nationstar aggressively pursued collection, posted May's home for foreclosure and conducted inspections of her residence. May also testified that Nationstar employees, at times, spoke to her in a mocking and sarcastic manner and that she suffered physical ailments from the stress caused by Nationstar's conduct. In evaluating this evidence, it was the jury's responsibility to determine the credibility and weight of the evidence presented. In doing so, the jury was free to reject Nationstar's characterization of its conduct and determine that these facts and circumstances warranted punitive damages. The verdict reflects the jury's decision to credit May's arguments that her repeated protests and requests for assistance should have halted the collection process long before the foreclosure proceedings commenced. *See JCB, Inc.*, 539 F.3d at 873 (explaining that it is the jury's role "to evaluate [the] evidence and decide what inferences should be drawn from it").

A review of the trial record establishes that there is ample evidence that supports the jury's determination. The jury's verdict reflects its assessment of the evidence, including its rejection of Nationstar's good-faith theory and acceptance of May's arguments that Nationstar acted with a reckless indifference to her rights. On this record, sufficient evidence supports the jury's award of punitive damages. Nationstar's renewed assertions that it acted in good faith provides no legal basis to vacate the jury's verdict.

---

from negligent conduct evincing "complete indifference or conscious disregard" to the rights of others).

B.

Nationstar next argues that the $400,000 punitive damages award is unconstitutionally excessive because it violates the Due Process Clause of the Fourteenth Amendment. The constitutionality of punitive damages is subject to de novo review. *Trickey*, 705 F.3d at 802.[5] Although juries have considerable flexibility in determining the amount of punitive damages, the Due Process Clause serves as a governor and prohibits "grossly excessive civil punishment." *Id.* (quoting *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012)). Punitive damages are grossly excessive if they "shock the conscience" of the court or "demonstrate passion or prejudice on the part of the trier of fact." *Ondrisek*, 698 F.3d at 1028 (quoting *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004)).

We consider three factors when determining whether a punitive damages award shocks the conscience or demonstrates passion or prejudice. They are "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between actual or potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases." *Id.* (quoting *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005)); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). These factors serve as the "guideposts" to ensure that a defendant receives proper notice of possible penalties. *Ondrisek*, 698 F.3d at 1028. We address each factor in turn.

---

[5]Missouri has adopted the federal standard for reviewing the constitutionality of a punitive damages award. *See Krysa v. Payne*, 176 S.W.3d 150, 156-57 (adopting federal standard, but noting deference to trial court's findings of fact).

1.

We first evaluate whether the reprehensible nature of Nationstar's conduct warrants punitive damages. Reprehensibility is the most important guidepost. *Gore*, 517 U.S. at 575. When assessing reprehensibility, the Supreme Court instructs us to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The presence of just one indicium of reprehensibility is sufficient to render conduct reprehensible and support an award of punitive damages. *See Trickey*, 705 F.3d at 803.

The record here supports a conclusion that Nationstar's conduct was reprehensible. May suffered physical harm. The severe stress attributable to Nationstar's conduct caused May to experience abdominal pain, vomiting, depression and anxiety. *See Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 790 (8th Cir. 2009) (concluding that physical symptoms attributable to severe stress qualify as physical rather than economic harm). Also, as addressed in Part II.A.1., the jury specifically determined that Nationstar acted with a reckless indifference to May's substantive rights. *See Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1027 (8th Cir. 2000) (explaining that the jury's substantive conclusion is relevant to a determination of reprehensibility). Nationstar concedes that May was financially vulnerable. Nor was Nationstar's conduct an isolated incident. Nationstar repeatedly

-11-

invaded May's privacy over the course of two years through actions including making collection calls to May at her workplace, conducting home inspections and sending foreclosure letters. *See, e.g.*, *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 839 (observing that a pattern of misconduct constitutes repeated actions). The reprehensible nature of Nationstar's conduct supports the jury's award of punitive damages. *See Trickey*, 705 F.3d at 803.

2.

As to the second factor, Nationstar contends that the 8-to-1 ratio between May's $400,000 punitive award and $50,000 compensatory award is too great. At most, according to Nationstar, a 1-to-1 ratio is appropriate. We disagree.

We do not apply "a simple mathematical formula" to determine the constitutionality of a punitive damages award. *Gore*, 517 U.S. at 582. But few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process. *State Farm*, 538 U.S. at 425. A 4-to-1 ratio likely will survive any due process challenge "given the historic use of double, treble, and quadruple damages." *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 363 (8th Cir. 2009). Yet the 4-to-1 ratio established in *Wallace* is not dispositive because an award of punitive damages turns on the specific facts of each case. *State Farm*, 538 U.S. at 425; *see also United States v. Big D Enters., Inc.*, 184 F.3d 924, 933 (8th Cir. 1999) (rejecting argument that punitive damages must be limited to 4-to-1 ratio as "miscontru[ing] the applicable law"). A higher ratio may be justified when the injury is hard to detect or the monetary damages are difficult to quantify. *Gore*, 517 U.S. at 582. Indeed, we have explained that a 4.8-to-1 ratio is the current constitutional boundary for multi-million dollar compensatory awards, *see Ondrisek*, 698 F.3d at 1030 (citing *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 827 (8th Cir. 2004)), and have affirmed

higher ratios for smaller compensatory damage awards, *see Trickey*, 705 F.3d at 804 (affirming a 5-to-1 ratio); *Morse v. S. Union Co.*, 174 F.3d 917, 925-26 (8th Cir. 1999) (affirming a 5.7-to-1 ratio).

Our decision in *Morse* provides a meaningful reference to analyze May's award here. After the district court granted remittitur motions to reduce the original awards, the plaintiff in *Morse* received $70,000 in compensatory damages and $400,000 in punitive damages arising from the defendant's violation of the Age Discrimination in Employment Act (ADEA). 174 F.3d at 921. When affirming other punitive damages awards, we have cited with approval the district court's rationale for the punitive damages award in *Morse*:

> [The plaintiff's] evidence, which the jury credited, shows that [the employer's] top management [implemented policies that violated the ADEA] to achieve company objectives. . . . The award of $400,000 is less than one one-thousandth of [the employer's] approximately $500,000,000 net worth and the ratio of punitive to compensatory damages . . . is less than 6:1, a ratio that in these circumstances does not set off any alarm bells.

*Trickey*, 705 F.3d at 804 (citing *Morse*, 174 F.3d at 925).

When comparing May's award to the award at issue in *Morse*, May received $50,000 in compensatory damages rather than $70,000, resulting in an 8-to-1 ratio for May. But here, as in *Morse* and *Trickey*, the jury credited May's evidence that Nationstar acted with a reckless indifference to her substantive rights. The $400,000 punitive award also accounts for thirty-three-ten-thousandths of one percent (0.00033) of Nationstar's approximate $1.2 billion net worth. *See id.* (considering net worth of defendant as relevant to the analysis). Under the facts and circumstances

-13-

presented, the 8-to-1 ratio of May's award "does not set off any alarm bells," and it is not unconstitutionally excessive. *See id.*

3.

The final factor for consideration is the "disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428 (internal quotation marks omitted). The parties concede that there are no comparable civil penalties in this case because there is no civil penalty for invasion of privacy under Missouri law and the civil penalties for May's federal claims are nominal. Although May argues that her federal claims *could* have included statutory penalties for the costs of prosecution, she concedes that there is no way to discern which conduct the jury considered to be an invasion of her privacy. In light of the similarities between this case and others in which we have upheld an award of punitive damages, however, the absence of comparable civil penalties does not render the punitive damages award unconstitutionally excessive. *See Trickey*, 705 F.3d at 804; *Morse*, 174 F.3d at 925-26.

In sum, the jury's $400,000 punitive damages award does not violate the Due Process Clause of the Fourteenth Amendment.

II.

We next address May's cross-appeal, in which she challenges the district court's decision to exclude the testimony of Jennifer Prostredny, who allegedly experienced conduct by Nationstar that is similar to Nationstar's treatment of May. May argues that the district court erred because the admission of Prostredny's

-14-

testimony would have rebutted Nationstar's claims of good faith and established that Nationstar's conduct was reckless and reprehensible. May also contends that the district court erroneously instructed the jury on her claim under the Real Estate Settlement Practices Act. We address each argument.

## A.

Before trial, Nationstar moved *in limine* to exclude "any reference to the facts or circumstances regarding or involving any borrower besides [May], including introducing any evidence regarding the facts and circumstances involving Jennifer Prostredny."[6] Nationstar argued that Prostredny's testimony was inadmissible because it was irrelevant, prejudicial and improper propensity evidence. The district court granted Nationstar's motion, but reserved its decision as to admissibility for the purpose of rebuttal. The district court's ruling, however, precluded Nationstar from employing a defense theory that May's experience was isolated.

A Nationstar Vice President testified on cross-examination that May "was an exception" and "not [in] the majority . . . not what we want to happen to other customers." The district court immediately admonished Nationstar and instructed the witness not to address "this sort of an issue." Because the witness was under cross-

---

[6]Nationstar contends that May failed to preserve this issue for review because Prostredny's testimony is not included in the appellate record and May failed to proffer the testimony at trial. But a motion *in limine* preserves an evidentiary ruling for appeal absent an offer of proof at trial. *See Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014). The fact that Prostredny's testimony is not included in the appellate record also is not dispositive. Nationstar relies on Rule 103(a), Fed. R. Evid., but that Rule provides that a claimed error is preserved if the substance of the excluded testimony is "apparent from the context." Neither party disputes that Prostredny's testimony relates to her experience with Nationstar that was allegedly similar to Nationstar's treatment of May.

examination, however, the district court rejected May's argument that Nationstar "opened the door" as to whether May's experience with Nationstar was an isolated one. As a remedy, the district court permitted May's counsel to ask the Nationstar Vice President whether Nationstar had treated other customers similarly when servicing their mortgages.[7] The Nationstar Vice President admitted that "Nationstar . . . made errors with other borrowers."

The district court has broad discretion when deciding what evidence to admit at trial. *Cummings v. Malone*, 995 F.2d 817, 823 (8th Cir. 1993). We review a district court's decision to exclude evidence for a clear and prejudicial abuse of discretion. *Id.* An abuse of discretion occurs when the district court erroneously excludes admissible evidence and "there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." *King v. Ahrens*, 16 F.3d 265, 268 (8th Cir. 1994) (quoting *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987)). We may affirm evidentiary rulings on any ground supported by the record. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 895 (8th Cir. 2010).

We have affirmed the exclusion of evidence under circumstances nearly identical to those here. In *Bair v. Callahan*, we held that the district court did not abuse its discretion by excluding evidence of an orthopedic surgeon's mistakes in treating other patients on the ground that the evidence constituted improper, prejudicial propensity evidence. 664 F.3d 1225, 1229-30 (8th Cir. 2012). In addition, we concluded that admission of such evidence would result in "mini trials" that would needlessly confuse and distract the jury by drawing its attention away from the germane issues. *Id.* at 1230. We affirmed the district court's decision to permit

---

[7]We do not endorse the district court's statement to the parties regarding its expectation that specific remedial testimony would be rendered.

more limited questioning that preserved an argument for presentation to the jury while preventing litigation of each prior act. *Id.*

Here, the district court excluded the Prostredny testimony to foreclose a needless "mini trial" about another borrower's experience for the improper purpose of establishing Nationstar's alleged propensity for mistreating other borrowers. *See id.* This ruling did not improperly impede May's presentation of evidence to undermine Nationstar's good-faith defense, which the jury apparently credited when it awarded her punitive damages. The decision to exclude Prostredny's testimony was well within the district court's sound discretion.

B.

May also challenges the district court's jury instruction on her Real Estate Settlement Procedures Act (RESPA) claim. May argues that the instruction was erroneous because it was founded on a statutory provision that had not become effective, it incorrectly defined an exception to Nationstar's duty and it misstated provisions of the relevant regulation. Nationstar counters that May waived this issue by failing to object to the instruction at trial. Alternatively, Nationstar defends the instruction as a common-sense statement of applicable law and adds that any potential error had no effect on the jury's verdict.

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). When followed by litigants, Rule 51 affords the district court the opportunity to correct a defective instruction and helps "to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." *Mo. Pac. R.R. Co. v. Star City Gravel Co.*, 592 F.2d 455, 459

-17-

(8th Cir. 1979). Rule 51 requires a specific objection to a jury instruction before the jury retires, otherwise "a litigant waives the right on appeal to object to a jury instruction on those grounds." *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 333 (8th Cir. 1997). In the absence of a distinct objection, we will reverse only for plain error. *See* Fed. R. Civ. P. 51(d)(2); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995). May did not object to the district court's RESPA instruction in a substantive manner. Accordingly, plain-error review is appropriate. Plain-error review is narrow and "confined to the exceptional case in which error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006) (internal quotation marks omitted).

As a party asserting a RESPA violation, May was required to demonstrate that (1) she sent Nationstar a qualified written request, (2) Nationstar failed to respond to that request, and (3) she suffered damages. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012). Jury Instruction 19A, the target of May's appeal, stated: "Nationstar was not required to respond to any qualified written request if it reasonably determined that the request asserted the same error as an error previously asserted by May." May argues that Jury Instruction 19A improperly relied on a regulation that was not in effect at the time of Nationstar's misconduct. The effective date of that regulation—12 C.F.R. § 1024.35(g)(1)(I)—was January 10, 2014. According to May, many of her written requests to Nationstar preceded that effective date. Nationstar responds that Section 1024.35(g)(1)(I) is a codification of a preexisting "common-sense exception" to RESPA that applied to all of May's written submissions.

The parties' arguments demonstrate the importance of making a substantive objection when an instruction is offered. When such an objection is raised for the first time on appeal, we are placed in an untenable position.

-18-

To correct the error, we would have to notice *sua sponte* that the district court did not act *sua sponte* to provide a jury instruction that [a party] should have provided, and then we would have to remedy the problem in the face of [the complaining party's] *relative indifference* to it. We have an adversarial system of justice, not an inquisitorial one, and to [correct the error despite the inaction] would be to blur the line between the two systems. We decline to do so.

*Swipies v. Kofka*, 419 F.3d 709, 717 (8th Cir. 2005) (emphasis added).

Assuming without deciding that Jury Instruction 19A is a misstatement of the law, such an error would not entitle May to a reversal under plain-error review.[8] For example, in *Christopherson v. Deere & Co.*, although the district court erroneously instructed the jury on a plaintiff's assumption of the risk, we affirmed because the exacting standard of plain error was not met. 941 F.2d 692, 694 (8th Cir. 1991) (concluding that "the essential fairness of the trial was not undercut by the omission of the word 'unreasonably' . . . and plaintiffs, who have been awarded substantial compensatory damages, have not suffered a miscarriage of justice"). The same is true here. Given the multiple theories of defense to the RESPA claim that Nationstar advanced, we can only speculate about the reason for the jury's verdict. Moreover, May recovered $500,000 in damages, a circumstance that undermines any argument

---

[8]Case law supports each party's position as to Jury Instruction 19A. In *Campbell v. Nationstar Mortgage*, the United States Court of Appeals for the Sixth Circuit concluded that an instruction similar to Jury Instruction 19A stated an exception that had yet to take effect. 611 F. App'x 288, 297 (6th Cir. 2015). Notably, as the defendant in that case, Nationstar made an argument similar to the argument May now advances. But other courts have adopted Nationstar's position in this case, that Jury Instruction 19A stated a common-law exception to RESPA for duplicate requests. *See, e.g.*, *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 409 (E.D.N.Y. 2012). This split in authority underscores the importance of substantive objections at trial for the district court's consideration.

that the alleged RESPA error resulted in a miscarriage of justice.  On this record, May fails to establish that Jury Instruction 19A was plainly erroneous.

## III.

Based on the foregoing analysis, we affirm on all grounds.

_____