Dolores M. WILFING, Appellant,

v.

GENERAL MOTORS CORPORATION, a corporation, Appellee.

No. 81–2105.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1982.

Decided July 16, 1982.

Rehearing Denied Aug. 13, 1982.

---

Frank P. Matthews of Matthews, Cannon & Riedmann, P. C., Omaha, Neb., for plaintiff-appellant.

Gaines, Otis, Haggart, Mullen & Carta, Omaha, Neb., for appellee.

Before LAY, Chief Judge, MARKEY,[*] Judge, and HENLEY,[**] Circuit Judge.

HENLEY, Senior Circuit Judge.

Plaintiff Dolores M. Wilfing appeals the district court's [1] judgment for defendant in this diversity action for damages for injuries sustained by plaintiff in an automobile accident. We affirm.

On October 5, 1978 plaintiff and her husband Robert Wilfing purchased a new 1978 Chevrolet Monte Carlo from Midway Chevrolet in Valley, Nebraska. The car was taken to Midway's service department on November 17, 1978 with several complaints including an assertion that the steering "wandered." James Webb, the service manager at Midway, testified that he test drove the Wilfings' car but was unable to detect a steering malfunction. On Decem-

---

[*] Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

[**] Judge Henley assumed senior status June 1, 1982.

1. Richard E. Robinson, United States Senior District Judge, District of Nebraska.

ber 22, 1978, while Mrs. Wilfing was driving on a straight road under normal driving conditions, her car edged off the road to the right, then turned sharply to the left and skidded sideways off the road into a tree. The car was demolished and Mrs. Wilfing sustained a severe back injury. She asserts that the steering wheel "locked" and that the car turned to the left of its own accord.

After General Motors failed to act on the Wilfings' claim, the present products liability suit was filed on April 26, 1979. It is plaintiff's position that the accident was caused by a defective spool valve, a component in the power steering mechanism that controls the flow of fluid to assist in turning the wheels. Trial commenced on June 3, 1981, and the jury returned a verdict on June 10 in favor of defendant.

■ Plaintiff's first contention on appeal is that the trial court erred in granting defendant's motion to quash four notices of deposition. The court initially closed discovery on March 6, 1980, the date of the pretrial conference, although it appears that some discovery may have occurred without objection after that date. Discovery was reopened at plaintiff's request on November 14, 1980 for a period of sixty days, that is, until January 14, 1981. On January 28 plaintiff moved the court to extend the time for discovery on the grounds that scheduling difficulties and defendant's lack of cooperation had prevented plaintiff from obtaining certain depositions. The court denied this motion on February 6, noting that the motion had not been filed until fourteen days after the expiration of the sixty day period. On February 12 and 13 plaintiff filed four notices of deposition for the stated purpose of preserving testi-

mony for trial rather than for discovery. Defendant moved to quash these notices on the grounds that the notices were contrary to the court's February 6 order and that the witnesses sought to be deposed were not listed on plaintiff's pretrial list of witnesses or in any of plaintiff's answers to interrogatories. Plaintiff responded that the court had granted permission for plaintiff to depose the witnesses for the purpose of preserving their testimony. The court, however, in granting defendant's motion to quash, stated that said permission had been granted on the assumption that the witnesses in question were listed in the pretrial order.[2]

Plaintiff claims that these depositions were necessary to provide evidence of similar steering problems experienced by other owners of Monte Carlos. A review of the record, however, reveals that plaintiff was able to introduce evidence of at least two other similar incidents. We therefore conclude that the prejudice, if any, to plaintiff's case resulting from the lack of these depositions was minimal,[3] and we find no abuse of the trial court's discretionary power to control the time limits of discovery, *see Greyhound Lines, Inc. v. Miller,* 402 F.2d 134, 144–45 (8th Cir. 1968), or to exclude the testimony of witnesses not listed prior to trial, *see Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 897–98 (8th Cir. 1978).

■ Plaintiff's second contention is that the trial court erred in excluding certain evidence relating to an alleged similar steering problem experienced by one Mrs. Davie Cline with a new 1978 Monte Carlo purchased from Queen City Chevrolet in Cincinnati, Ohio.[4] Plaintiff argues that the

---

2. Plaintiff asserts that her copy of the pretrial order contains certain handwritten modifications, including an addition to her list of witnesses of "Rebuttal witnesses to defendant's experts," which apparently were not added to the court's copy. This assertion does not affect our conclusion that the trial court did not abuse its discretion in quashing the notices of deposition, and, at any rate, we think it was plaintiff's responsibility to alert the court concerning any possible omissions or mistakes in the pretrial

order which was filed almost one year before plaintiff sought to depose these witnesses.

3. We are not persuaded by plaintiff's argument that her case was prejudiced by the fact that the evidence introduced concerned incidents involving female drivers whereas several of the requested depositions concerned incidents involving male drivers.

4. Specifically, plaintiff sought to introduce (1) correspondence between General Motors and

excluded evidence, which was offered in response to defendant's evidence that the power steering mechanism from plaintiff's car had been visually inspected and tested in another car without any indication of a defective condition, was necessary to show, among other things, that steering wandering was symptomatic of a defective spool valve and could occur intermittently, and that a visual inspection would not necessarily reveal the defect.

After reviewing the record, we find that the substance of the excluded evidence was introduced through testimony and conclude that plaintiff was not prejudiced by the court's rulings. We recognize that the trial judge has broad discretion in ruling on the admissibility of evidence and that our role is limited to reviewing for a clear abuse of that discretion. *Roberts v. Hollocher*, 664 F.2d 200, 205 (8th Cir. 1981), *and cases cited therein*. We find no such abuse in the present case.

■ Finally, plaintiff contends that she is entitled to a new trial on the ground of improper statements made by defense counsel during closing argument. The first remark to which plaintiff objects was a reference to the fact that defendant, rather than plaintiff, called as a witness the highway patrolman who was present at the scene of Mrs. Wilfing's accident. Plaintiff's counsel said in opening statement that he intended to call the patrolman. However, although counsel had issued a subpoena, the patrolman could not be located on the day he was

scheduled to appear. The following day, the patrolman was present when defendant's counsel called him. On cross-examination, plaintiff's counsel questioned him concerning his earlier absence and established that the patrolman had arranged with plaintiff to appear, but the court prevented counsel from obtaining a full explanation. In closing argument, defense counsel stated, "He [plaintiff's counsel] didn't call the Highway Patrolman. We had to. And I suppose this is one of the few cases that [plaintiff's counsel] ever tried or that I've ever seen where the defendant has to call the Highway Patrolman." Such a distortion clearly violates the spirit of the rule that in federal jury trials, counsel's argument must be limited by the evidence and law pertinent to the issues in the case. *London Guarantee & Accident Co. v. Woelfle*, 83 F.2d 325, 342 (8th Cir. 1936). Furthermore, "when a lawyer departs from the path of legitimate argument, he does so at his own peril and that of his client, and if his argument is both improper and prejudicial, then he [may destroy] any favorable verdict that his client may obtain." *Id.* at 343. Although we think defense counsel's statement was certainly suspect to say the least, we are satisfied that through cross-examination and rebuttal argument plaintiff was able to negate sufficiently any resulting prejudice.[5]

Plaintiff's second objection concerns defense counsel's statement that defendant was not allowed to inspect the car and was forced to buy it in order to examine it.[6] Plaintiff asserts that defendant was noti-

---

Cline concerning the replacement of the spool valve in Cline's car; (2) Queen City's copy of the repair order which was submitted to General Motors in connection with the warranty claim for the replacement of the spool valve; (3) a letter from Queen City to Cline indicating that before replacement of the valve, Cline's car had been test driven several times without any steering malfunction; (4) testimony by Queen City's shop foreman suggesting that a defect in a spool valve cannot necessarily be observed by visual inspection; and (5) certain portions of an automobile repair manual indicating that steering wandering is symptomatic of a defective spool value. Except for the portions of the manual which were excluded as hearsay, the above listed evidence was excluded as irrelevant.

5. In rebuttal, plaintiff's counsel made the following statement to the jury: "You heard the Highway Patrolman. He [defense counsel] made a big thing about the fact that they had to call the Highway Patrolman. You heard me ask him if I hadn't subpoenaed him, if he wasn't supposed to come for us, and say that I wanted to show why he didn't come."

6. Plaintiff interrupted at this point, but the court allowed defense counsel to continue in response to plaintiff's statement during closing argument that defendant had not inspected the car for a year and a half after the accident.

fied by letter on March 14, 1979 that the car was available for inspection. After defendant failed to take advantage of this opportunity, plaintiff wrote again on May 15, 1979 indicating that no commitment would be made concerning the preservation of the vehicle beyond six months. Defendant subsequently bought the wrecked automobile, but we find nothing in the record to support defense counsel's statement that "we had to buy the car to look at it." Defendant attempts to justify this statement by arguing that the initial permission to examine the car was burdened by unreasonable restrictions. However, the only limitation apparent in the letter is plaintiff's request that General Motors supply plaintiff with the name of the inspector, a list of any parts removed, and a report of any findings. It seems to us that plaintiff offered defendant every reasonable opportunity to inspect the car and that defense counsel's statement is completely unfounded.

After reviewing the record, however, we cannot say that plaintiff's case was significantly prejudiced by defense counsel's intemperate remarks. In addition, any possible prejudice was lessened by the court's cautionary instruction to the jury that it "must disregard ... any remarks of counsel in their opening statements, or during the progress of the trial, or in the arguments, not warranted by the evidence." Although the record suggests an antagonism between opposing counsel that serves neither the interests of justice nor the interests of their clients, we cannot say that the denial of a new trial amounts to an abuse of the trial court's discretion. *See Creative Cookware, Inc. v. Northland Aluminum Products, Inc.*, 678 F.2d 746, 751 (8th Cir. 1982).

For the foregoing reasons, the judgment of the district court is affirmed.