Theodore P. MOSES, Appellant,

v.

UNION PACIFIC RAILROAD,
Appellee/Appellant,

v.

MID–SOUTH MILLING COMPANY,
Appellee.

Nos. 94–3740, 94–3742.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1995.

Decided Aug. 29, 1995.

Rehearing Denied Oct. 4, 1995.

Douglas P. Dowd, St. Louis, MO, argued (Dennis J.C. Owens, Kansas City, MO, on the brief), for appellant.

Michael O'Keefe, St. Louis, MO, argued (James W. Erwin and J. Powell Carman, St. Louis, MO, on the brief), for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Theodore Moses sued Union Pacific and some other railroads for personal injuries arising out of an accident involving a railroad car. Union Pacific then impleaded Mid–South Milling Company, Mr. Moses's employer, for indemnity under an agreement between them. Mr. Moses was unsuccessful in his suit against Union Pacific, and the district court granted Mid–South's motion for summary judgment. Both Mr. Moses and Union Pacific have appealed their respective cases. We affirm as to Mr. Moses's suit against Union Pacific, but reverse the grant of summary judgment in favor of Mid–South.

## I.

Mr. Moses suffered personal injuries when he was struck in the head by a pull plate that broke off a Burlington Northern hopper railroad car while he was assisting in pulling the car with an electric winch at Mid–South's plant in Kansas City, Kansas. (A pull plate is a U-shaped piece of metal which Mid–South employees used for moving the railcar.) Evidence showed that a latent defective weld gave way causing the pull plate to break off. Union Pacific's relationship to the accident is that it took delivery of the hopper from another railroad and inspected it before delivering it to Mid–South.

After settling with the other defendant railroads, Mr. Moses proceeded to a jury trial against Union Pacific on claims of negligence and breach of warranty of fitness by Union Pacific as a bailor. The jury returned a verdict in favor of Union Pacific, finding that Union Pacific was not negligent and did not breach a warranty of fitness.

## II.

### A.

Plaintiff objects first to statements that defendant's counsel made in closing argument concerning Mr. Moses's workers com-

pensation insurance. The manner in which the issue of collateral sources was injected into the trial requires a rather detailed recitation of matters in the record.

Plaintiff himself sought to admit, as a business record, a handwritten note made by Mid–South's plant manager, a Mr. Starkey. For reasons not altogether clear to us, plaintiff offered the entire file in which the note was found, and the file, over defendant's hearsay objection, was admitted. Some documents in the file referred to plaintiff's workers compensation coverage and medical insurance. Defense counsel then asked the court to allow him to cross-examine Mr. Starkey on the subject of collateral sources on the ground that they were relevant to Mr. Starkey's motives for testifying. Counsel intimated that Mid–South itself, because it paid some medical benefits from its own pocket, might have a lien on any recovery that plaintiff might receive. We presume, therefore, that counsel's request to cross-examine on the matter of collateral sources was based on his right to impeach the witness.

Once Mr. Starkey's actual cross-examination began, however, counsel for the defendant did not limit himself to an inquiry concerning medical insurance. He also asked questions about Mr. Moses's workers compensation insurance carried by Cigna Corporation, and attempted to get Mr. Starkey to opine that there was no limit whatever to Mr. Moses's workers compensation benefits. Mr. Starkey simply stated that he had no idea what that coverage was.

During closing argument, over plaintiff's objection, defense counsel was allowed to tell the jury what was not true, namely, that "the Cigna Insurance Company ... is here in this courtroom asking for all these medical expenses and all of these lost wages, and it's not Ted Moses." This was untrue because Mr. Moses was the plaintiff. This was not a subrogation action and Cigna's interest, if any, in the suit was limited to that of a lienholder on the judgment. Defendant's counsel then was allowed to opine concerning the content of Kansas law. He told the jury that "[i]t's the Cigna Insurance Company who has come in here who is going to be responsible for this six million two hundred

thousand dollars in the future ... who by law is required under Kansas Workmen's Compensation law to pay Mr. Moses, to pay his medical bills and to pay him compensation...." Finally, counsel specifically invite the jury to "put a zero" in the damages interrogatory for economic loss because the "Cigna Insurance Company has that loss and they should pay it ... because that's their obligation as a workmen's compensation insurer." He made several other statements of a like nature to the jury, all without comment or admonition from the trial court.

■ It is familiar law that a plaintiff's collateral sources of compensation cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to find no liability, or to reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered. *See Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 36–37, 84 S.Ct. 1, 2–3, 11 L.Ed.2d 4 (1963) (per curiam); *Eichel v. New York Central R. Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (per curiam). We have held, however, for obvious reasons, that once a plaintiff asserts that he does not have coverage, then the defense may show that he does. *See, e.g., Lange v. Missouri Pacific R. Co.*, 703 F.2d 322 (1983). We have also held that if a plaintiff is claiming emotional injury on account of financial stress following an accident, then defendant may inquire into collateral sources since these, if there are any, would tend to reduce the plaintiff's stress. *Cowens v. Siemens–Elema AB*, 837 F.2d 817 (8th Cir.1988). In these limited kinds of situations, where plaintiff's case itself has made the existence of collateral sources of probative value, we have allowed proof of them.

■ Defendant's counsel urges us to hold that plaintiff's own evidence "opened the door" to his examination of Mr. Starkey. We are not at all prepared to say that plaintiff's inadvertent admission of the matter of his insurance coverage gave defendant an unbounded *carte blanche* to cross-examine Mr. Starkey on the matter of collateral sources. Indeed, we have alluded approvingly to cases that hold that such is emphatically not the case. *See Hannah v. Haskins*, 612 F.2d 373

(8th Cir.1980). Defense counsel's cross-examination went well beyond the predicate that he maintained would support it, namely, the witness's possible self-interest.

What we are prepared to say, in any event, is that plaintiff's evidence certainly did not "open the door" to improper appeals to the jury's prejudice against insurance companies or to invitations, implicit or otherwise, not to find the defendant liable because plaintiff would be fully compensated for his loss by insurance. We believe that this is precisely what defendant's counsel did in closing argument, and the impropriety of doing so is underscored by the fact that his statement that all of plaintiff's claimed economic losses would be covered by workers compensation finds no basis in the evidence, nor does defendant cite us to any Kansas law, statutory or otherwise, that would require that result. It would perhaps, in a proper case, be open to a defendant to argue that sympathy for the plaintiff should not move a jury to find liability, since plaintiff's losses would be compensated, but that is not our case, both because defendant's appeal was not a limited one and because the extent of the coverage was unknown. Under the circumstances, we think that it was error for the trial court not to sustain plaintiff's objection and caution the jury about misusing evidence of collateral sources.

■ We are nevertheless mindful that to constitute reversible error improper statements made in argument must be plainly unwarranted as well as clearly injurious, and the burden of making a "concrete showing of prejudice," resulting from improper closing argument falls upon appellant. *E.g., Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 285 (8th Cir.1995); *City of Malden v. Union Elec. Co.*, 887 F.2d 157, 164 (8th Cir.1989); *Vanskike v. Union Pacific R.R.*, 725 F.2d 1146, 1149 (8th Cir.1984). Here, Mr. Moses makes no argument regarding prejudice other than pointing to the fact that he lost. We shall, nonetheless, undertake to review the record to determine whether plaintiff's case was so clearly prejudiced by improper argument that a new trial is necessary. *See Scott v. James*, 902 F.2d 672, 674 (8th Cir.), *cert. denied*, 498 U.S. 873, 111

S.Ct. 198, 112 L.Ed.2d 160 (1990); *City of Malden*, 887 F.2d at 164; *Tyler v. White*, 811 F.2d 1204, 1207 (8th Cir.1987).

■ Much of the evidence purporting to prove Union Pacific's negligence had to do with whether one of its workers had misused and thereby had weakened the pull plate on the railcar in question shortly before the accident. The evidence linking this employee's unsafe practices to the defective pull plate of the hopper in question, however, was quite speculative. Evidence regarding the breach of warranty claim, moreover, was similarly insubstantial, and suggested that Mid–South did not rely on Union Pacific's skill or judgment to select or furnish a suitable railcar. The evidence furthermore showed that Mr. Moses was himself significantly negligent. For example, he was standing too close to the hopper while the winch was in use; the winch was at an unsafe angle to the hopper; and the pull plate was already bent and thus featured an open and obvious condition suggesting that it was hazardous. The jury was instructed that the plaintiff must be less than fifty percent negligent in order to recover, and we note that plaintiff does not argue that the verdict was against the weight of the evidence. We therefore cannot say, based on our review of the record before us, that the closing argument was clearly injurious, and plaintiff has given us no reason to believe otherwise.

" '[W]hen a lawyer departs from the path of legitimate argument, he does so at his own peril and that of his client, and if his argument is both improper and prejudicial, then he [may destroy] any favorable verdict that his client may obtain.' " *Wilfing v. General Motors Corp.*, 685 F.2d 1049, 1052 (8th Cir. 1982) (quoting *London Guar. & Accident Co. v. Woelfle*, 83 F.2d 325, 343 (8th Cir.1936)). Although we strongly disapprove of defense counsel's closing argument, we decline to reverse because plaintiff has failed to make a showing of prejudice.

**B.**

■ Mr. Moses also argues that Union Pacific's trial counsel made a statement in opening argument that requires us to over-

turn the verdict. Defense counsel stated that "this case is about a seriously injured plaintiff who has settled his claims with the people who were at fault and who now through his lawyers seeks a windfall against my client." Plaintiff objected to the statement and the trial court sustained the objection, but plaintiff did not ask for a mistrial. Although wholly improper, the remark is not so clearly injurious as to require us to remand for a new trial. *See Vanskike,* 725 F.2d at 1149. And while plaintiff argues that the district court should have declared a mistrial, under these circumstances the court was not obligated to declare a mistrial sua sponte when plaintiff himself failed to move for one. *See United States v. Wright,* 433 F.2d 671, 675 (8th Cir.1970).

### III.

Mr. Moses raises four other issues.

■■■ First, he argues that the district court incorrectly determined that Kansas law applied to this case. *See Moses v. Burlington Northern R. Co.,* 854 F.Supp. 600, 601–03 (E.D.Mo.1994). Federal district courts must apply the choice-of-law rules of the forum state. *Dorman v. Emerson Elec. Co.,* 23 F.3d 1354, 1358 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 428, 130 L.Ed.2d 341 (1994). Missouri follows the Restatement, Second, Conflict of Laws (1971), which requires a court to evaluate certain enumerated contacts when deciding choice-of-law matters in personal injury cases. They are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Galvin v. McGilley Memorial Chapels,* 746 S.W.2d 588, 590 (Mo. App.1987) (citing *Kennedy v. Dixon,* 439 S.W.2d 173, 181 (Mo.1969) (en banc)); Restatement, Second, Conflict of Laws § 145(2). The district court analyzed each of the foregoing considerations and concluded that Kansas law applied, 854 F.Supp. 601–02, and we find no error in its analysis. Mr. Moses maintains that Missouri law should have been applied because it is more favorable to plain-

tiffs than Kansas law. While such a argument may be related to evaluation of the "relevant policies of the forum state," part of another more general set of considerations set forth in section 6 of the Restatement of Conflict of Laws, we believe that plaintiff's contention, even assuming that Missouri law is more favorable to him, has insufficient weight to overcome considerations more significant to a personal injury claim, such as the location of the conduct and the injury. *See Dorman,* 23 F.3d at 1358–59; *Kennedy,* 439 S.W.2d at 185.

■■■ Second, Mr. Moses contends that the district court erred in dismissing his claim under the Federal Safety Appliance Acts, 45 U.S.C. §§ 1 *et seq.* (1986) ("FSAAs"), *repealed and transferred,* 49 U.S.C. § 20301 *et seq.* (1995). The FSAAs, however, do not create an independent cause of action for injured parties. *Grogg v. Missouri Pacific R. Co.,* 841 F.2d 210, 212 (8th Cir.1988). While railroad employees have a cause of action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.,* "the nonemployee must look for his remedy to a common-law action in tort," *Urie v. Thompson,* 337 U.S. 163, 188, 69 S.Ct. 1018, 1033–34, 93 L.Ed. 1282 (1949), in which a violation of the FSAAs may be offered as evidence of negligence. *Miller v. Union Pacific R. Co.,* 900 F.2d 223, 224 (10th Cir.1990). It does not appear, moreover, that a pull plate is a "safety appliance" for purposes of the FSAAs, *see* 45 U.S.C. § 11 (listing safety appliances), and the FSAAs do not extend to devices not enumerated in section 11. *See Jordan v. Southern Ry.,* 970 F.2d 1350, 1354 (4th Cir.1992).

■■■ Third, Mr. Moses asserts that the district court mistakenly granted summary judgment on his strict liability claim. Kansas has adopted the rule that sellers of defective products are susceptible to strict liability. *Brooks v. Dietz,* 218 Kan. 698, 702, 545 P.2d 1104, 1108 (1976) (adopting Restatement (Second) of Torts § 402A). But the evidence here showed that Union Pacific neither manufactured, owned, sold, nor leased the hopper. Plaintiff has not directed us to any Kansas legal principle that would lead us to

conclude that strict liability should apply to Union Pacific in this instance.

■ Fourth, Mr. Moses maintains that testimony regarding Union Pacific's duties under the Interchange Rules of the American Association of Railroads (AAR) was error because such rules were irrelevant and their effect prejudicial. Plaintiff urges that such rules reflect the duties that exist between railroads, not the duties between a railroad and a non-railroad customer. We think that the plaintiff's argument is meritless. Plaintiff alleged that Union Pacific had a duty to inspect the pull plate on the hopper and that it failed to exercise ordinary care to make the pull plate reasonably safe. AAR rules, and industry safety rules in general, are admissible as some evidence that the railroad has acted in a generally non-negligent fashion with respect to persons who will be working in the environs of railcars. *See Fulton v. St. Louis–San Francisco Ry. Co.*, 675 F.2d 1130, 1132–33 (10th Cir.1982) (citing *Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 162–63 (8th Cir.1981)). The trial court properly instructed the jury on the law of negligence. Accordingly, we find no error in admitting the testimony regarding the AAR Interchange Rules.

We therefore affirm as to Mr. Moses's appeal.

### IV.

■ Union Pacific filed a third-party complaint against Mid–South seeking indemnification pursuant to an Industry Track Agreement (ITA) between Union Pacific and Mid–South. (It appears that Union Pacific wants reimbursement of the attorneys' fees that it incurred defending itself against Mr. Moses's lawsuit.) Mid–South sought and was granted summary judgment based on its contention that the agreement did not apply to Mr. Moses's accident.

In granting summary judgment, the district court construed the scope of the ITA very narrowly. Union Pacific alleged that Mid–South was negligent regarding its use of the railcar that injured Mr. Moses, including, for example, failing to inspect the railcar. Section 4(c) of the ITA provided that all injury "related to the construction, operation, maintenance, use, presence or removal of the Track shall be allocated" between the parties in one of several ways depending on their respective fault. If Mid–South, rather than Union Pacific, was at fault in a matter covered by the ITA, then Mid–South would be obligated to indemnify Union Pacific for losses to third parties, including the costs of defending litigation. ITA §§ 4(a)5, 4(c)2.

The district court concluded the ITA did not apply because the liability in this case was "based on the condition of a weld and is wholly unrelated to the construction, maintenance, use, etc. of the track." *Moses v. Burlington Northern R. Co.*, 854 F.Supp. 605, 607 (E.D.Mo.1994).

We realize that Kansas courts have taken the view that indemnity agreements must be strictly construed, *see, e.g., Cason v. Geis Irrigation Co. of Kansas,* 211 Kan. 406, 411, 507 P.2d 295, 299 (1973), but, even so, we see no reasonable construction, strict or otherwise, of the ITA that would render it inapplicable to this case. Mr. Moses's injury occurred while he was moving a railcar along the track and it was therefore unquestionably related to both the operation and the use of that track. We believe, therefore, that the district court's interpretation of the ITA was error.

Both parties urge us to address some of the other issues that the district court did not reach in granting summary judgment. We recognize that we may seek grounds in the record on which to affirm the district court, *see, e.g., United States v. Vance,* 53 F.3d 220, 221 (8th Cir.1995), but we have the option to decline to rule on issues not specifically decided by the district court in the first instance. *See, e.g., Garnac Grain Co. v. Blackley,* 932 F.2d 1563, 1571 (8th Cir.1991) (supp. op.); *Arcoren v. Farmers Home Admin.,* 770 F.2d 137, 139 (8th Cir.1985). Initial review by the district court, even on issues of law, is "helpful to us in exercising our reviewing function[.]" *Garnac,* 932 F.2d at 1571. We therefore decline to decide these other issues.

## V.

For the foregoing reasons, we affirm the district court as to Mr. Moses's appeal, reverse as to Union Pacific's appeal, and remand Union Pacific's claim for further proceedings consistent with this opinion.